With that, we will proceed to the next case. Maybe I can get the pronunciation of Mr. Leonard's name right. United States of America v. Leonard. And we'll be happy to hear from Mr. Hersey when you are ready. Good morning. This is Michael Hersey from Mr. Leonard. Good morning. Want to start off by saying I'm going to direct the court's attention to my rehab. I want to emphasize the fact that this is one of the few, maybe one of the first cases this court has heard where rehab has actually argued before the trial. It will be the noble review because rehab came out about three days before the trial and we had arguments on the motion. We have motion before the trial began. As you know, we know we hate. I'm sorry. Hear my own voice. Oh, is that you just brush. I'm sorry. No, sir. I'm just, I might be moving because I'm leaning in to try to hear. Can we stop the clock, please. Miss Tisa. So I'm having a hard time hearing you too. I was trying to check the settings on my iPad here and it didn't seem to help. I'd like to start over. We could I don't know how we can correct the problem. Can you lean in a little bit more. It's not that much better. I mean, for me, is it for now, the other judges at the volume. It seems to be going, going in and if you talk directly at the computer I think it's going to. OK, is this a little bit better than I'm trying to talk directly to me it is. It is better. It's still going in and out a little bit, but it's it's a better. OK, I'm sorry that you have to deal with this. OK, is this the age we live in? That's right. I think this this is an improvement. So if you don't mind, Mr. Hersey, starting from the top. No, not at all. We've reset the clock. OK, very good, Judge. I appreciate it. As I stated, good morning again. And this is one of the first cases the court is entertained where we have was actually argued before the trial. So it'd be a de novo because we had pitched battles on rehab. Just three days before the trial started. But with that, as you know, we have talked about both the status and possession being knowingly. And the fact that the government had to allege and prove that in a nutshell, is that the government did not allege or make reference to 924, which is the knowingly part. 922 G does not have a knowingly reference in it. And rehab in the Supreme Court said that these two had to be viewed in these two statutes. However, the government, in our case, alleged 924 H. Also, the placement of the word knowingly in this indictment was at the very end of the charge. The cases I cited from other circuits say that that makes it dubious as to what knowingly refers to, whether it's status and or possession. With that, I'd also. Let me ask you, let me ask you a question about that. So the district court here instructed the jury, I think correctly, because we have to come out three days before that they had to find that the defendant knowingly possessed and knowingly knew that he was a felon. And then the defendant stipulated at trial that he knew that he was a felon. So given all of that. I guess what are we supposed to do with that? And a lot of your argument that the superseding indictment didn't sufficiently state that state this element. Yes. Two or three things. One is this court has already held versus read. I started that in the brief. That's nine forty one one zero one eight. And neither a stipulation or a jury instruction can amend the effective indictment. So even further than that, instead of effective indictment, United States versus L.A. and seven, three, two, one, two, four. The only way to remedy the indictment is to rewrite it, which we declined to do. So even with that stipulation and with the jury instruction, remember, we tried to construct that jury instruction in light of the light of the let it be. Let's draw from the stipulation, because this court is also a stipulation after indictment. But before trial, I cannot hear a defect. So we entered this stipulation, probably three or four weeks before trial. That was after the indictment superseding months before the trial. So this court's own presidency stipulation cannot cure a defective indictment, especially under these circumstances, because you have to remember that rehave was a speed change. No circuit, including this or any other circuit in the United States, had ever held that there were two elements that had to be used knowingly in a 922-3-1 prosecution. So this was a major shift and was even contrary to this court's entire presidency, not just this court, although the United States. It wasn't the purpose. Didn't everyone involved understand that the purpose of the superseding indictment was to address the potential future holding and rehave? That was the government statement. I think that they may have been overestimating their crystal ball, because even with that, they still put knowingly at the end of the charge. And how hard is this? Just that he knowingly produced the firearm, he knowingly realized he was in a prohibited status and was a convicted felon. And let me just emphasize how tricky this is, because it would have changed my whole strategy. I asked for a continuum, because we were arraigned on the superseding indictment on the day of trial. That was three days after rehave. I said, Judge, give us a 30-day continuum so I can see whether I want to stay in this stipulation or not. And he denied that. I said, well, Judge, we're supposed to get 30 days after arraignment before we have to go to trial. He denied that. I said, well, could you give us three days so we can look at the strategy in light of rehave? And he denied that. So we had to try to do the best we could. We experienced pressure. I was curious about your arraignment point. Have we ever applied that 30-day rule to a superseding indictment? Judge, I think so, but I didn't cite that in the brief. I'd be glad to supplement with that. Okay. Yeah, that would be helpful. On the rehave issue, what's your best case for the argument that the way the government stuck knowingly sort of at the end didn't sufficiently state the element? It's ambiguous. When knowingly is at the end of the charge, it's not clear as to whether it modifies possession or status. Possession or status. I cited several cases in the brief from other circuits that have looked at that specifically. As a matter of fact, the Seventh Circuit, in the cases I cited in the brief, had three different indictments before that. One where knowingly was placed at the beginning of the indictment. Knowingly was placed in the middle of the charge. And the one that they approved or disapproved was the one where knowingly was placed at the end of the charge. Because when it's placed, knowingly is placed at the beginning of the charge, it usually modifies, just using plain grammar rules, both knowingly would be a status and possession. But in this case, Judge Bradshaw, knowingly is at the very end, and it's dubious as to what it modifies. Also, Judge, remember there's no reference in this indictment to the 924A2 knowingly. 922G1 by itself has no knowingly reference. So the Rehave team at the Supreme Court specifically said these two statutes have to be used in tandem to properly charge the case. So we would ask that it be remanded back to the district court with instructions to dismiss it. If there are any further questions on Rehave, I'd like to shift to the next question. Can I ask you one more clarifying question? Is that United States v. Mays or whatever from the Seventh Circuit that you talked about? If you look at that case, that's the three different indictments where knowingly is placed in different parts of the charge. Okay. Switching now to the motion to suppress, I would ask the court to send this back to the district court with instructions to reopen the motion to suppress. This court in Chellel, C-H-E-L-L-E-L, I cited in the brief, said that district court and this appellate court can look at the motion to suppress, the facts there, the issue, after developments at the trial and just before trial. There were several things that happened that were major that the magistrate, when he conducted the motion to suppress hearing, did not have. First of all, the magistrate himself said, and the district court said, that the linchpin of the government's case was the positive identification by Detective Noel of co-defendant Johnson allegedly brandishing a firearm and running with that firearm into a house. That's what they used as probable cause. But the government's case imploded in that two days before trial, Detective Noel came to the prosecutors and said, look, we're going to trial tonight and not now identify co-defendant Johnson in the video as the man was brandishing the gun. Now he did testify that I, with my own eyes, I saw this, but the jury rejected his testimony. And not only that, drugs that were used as probable cause for the search warrant turned out not to be drugs. The government's lab report came back and said these are not controlled substances. So with that, when you look at the state search warrant, because this state investigation, the main items, the identification of the co-defendant, the probable cause, and also the drugs that were with him, allegedly, and that tried not to be drugs, because there was no brandishing, changed dramatically. And also the government had its own witness there on the first day of trial. I, as a witness, heard the judge actually say that the drugs were mine. That was omitted from the search warrant that was given to the state court judge, which led to a serious and subsequent seizure of the items for which my client was charged. So if we take all those items from where we are at this point now and apply that, that's more than enough to strip away the probable cause that was there before. And I believe we should get a new hearing on that. Having seen this, at this point in time, seeing all these elements of the probable cause, we could say that they don't, the probable cause doesn't exist. Thank you. Thank you. Thank you. Mr. Or, I guess, Miss Gala. I don't I can't see any. Sorry. That's fine. Your Honors. Good morning. Good morning. Randy galler on behalf of the United States. We can hear you. Excellent. Good. I'm glad that technology is working this morning for me, at least. I will start with the rehab argument that opposing counsel raised, and I think it's a very important starting place for this court to recognize that the indictment. In this case was specifically changed in anticipation of the sea change that rehab brought where the indictment, the original indictment language had the word knowingly immediately proceeding, possessing the firearm. The superseding indictment changed that language moving and did so knowingly to the very end, which would imply that the knowingly requirement applied to everything preceding it. And that's very similar to we can we can go ahead and look at the case from the seventh circuit that appellant raises the maze case. And that court looked at the language in different 922 G indictments. And the first one that it looked at was very similar to the first version of our indictment, where the word knowingly was only in there once, and it immediately preceded the possession of the firearm. And they said that that was reasonable in that circumstance to believe that because knowingly came at the beginning, it was going to apply to everything that came after it. Similar here, where knowing came at the very, very end with all of the language coming first of what the elements were, and then the comma and did so knowingly, it's our position that that logically would be in the same viewed in the same way, where knowingly would logically could can certainly logically be read to apply to all of the preceding elements. What's the role of actual notice and interpreting an indictment because I know the, the foundational reason that an indictment has to clearly state all of the, all the elements and so that the defendant has notice of what they're being charged with and the ability to prepare a defense. What, how are we to incorporate any actual notice into interpreting an indictment. So, Judge grant notice is certainly one of the, the main purposes of the indictment, the main concerns is that the defendant is on notice of what he's being charged with. And in this case he certainly was because it was vetted in advance of trial and raised there's no question here that the defendant knew that the rules had changed. And now the government was required to prove that he not only knowingly possess the firearm, but also that he was aware of his status as a prohibited person because of his felony conviction. And, and, again, in this case there's no question that he was on notice of that. It's tricky though right because on the one hand I think that's true. On the other hand, you couldn't simply vaguely set out an incomplete description of the charge and the indictment and, and then say but we'll tell you later, or we'll tell you even right now, what you're being charged with and that will give you actual notice so it's tricky to think how, how those factors interplay when we're interpreting an indictment. Well, it's, it's our position Your Honor that there isn't any there was certain there was no trick here. There was certainly no question that this defendant was being charged with a felon in possession of a firearm. He was clearly charged with a violation of 922 G. The question, I suppose, is whether the knowing status of the knowing of his prohibited status element was clear enough. Our position is that it was because of its placement here at the end, where it logically would be read to apply to all everything preceding it. Unlike if I may go back to the other case in maze, where they said, Look, this is not going to this language cannot reasonably be read with knowing applying to not only the possession but also the knowledge of the status element, and the language there was what our indictment originally said. So, we changed that and under maze, which again is the appellants that case that appellant is citing it, it does seem reasonable that that language can be read to certainly cover everything it needed to hear all of the elements. I think it's very important to keep in mind that when we are looking at this, this court has made clear that we read the indictment as a whole, we give it a common sense construction and we use practical rather than technical considerations in interpreting that and the question and the test is not whether there might have been an in draft an indictment that was drafted with more clarity, as, as Mr. Hersey said you know how difficult would it have been to say, knowingly possess the firearm after knowingly being convicted of an offense. And that's true that that language is the, the most crystal clear, but that's not the test that this court employs this court looks at whether it what whether those minimal constitutional standards of notice were met and our position is that they were here. And this gallery. Just confirming that you know this, you went back to the grand jury to supersede this indictment. Right. Yes. And I mean when I was a prosecutor when we drafted the indictment and the grand jury either returned a true bill or not right i mean that that still works I guess. Yes. Okay. All right. And how many days before the trial. Did y'all get go back to the grand jury for the superseding and I, I don't have the dates in front of me exactly I believe the superseding indictment may have been somewhere between a week and two weeks before started. However, we didn't even have any language from rehab yet. That opinion only came out three days before the trial began, and was the was the indictment file the day the grand jury returned the true bill or was it filed when the later, or do you know, I believe that the superseding indictment would have been filed the day that it went to the grand jury or. Okay. All right, thank you. Sure. Moreover, setting aside, even, even if this court were to determine that the language was insufficient, even though it doesn't have to be the most perfect language, rather just language that is considered to be meeting those minimal constitutional standards. Harmless error still applies. And, and we fully appreciate that this is not plain error review. However, that doesn't mean that it requires that a deficient indictment would automatically require reversal. The constitutional harmless error standard would still apply here. There's only a very limited class of cases that are not subject to harmless error review. And those are what the court refers to as structural error. Those errors that infect the entire trial process, or where they necessarily rendered the trial unfair. This court has recognized six different scenarios where that involves and some examples of those are a complete denial of trial counsel, having a biased trial judge racial discrimination in grand jury selection, and so forth. This is not one of those situations, it does not qualify under any of those provisions, and it did not. There is no concern here that it rendered the trial unfair or infected the entire trial process. Because of some of the reasons Judge Brasher has already alluded to where the stipulation had been entered into where there was no question that this defendant knew of his prohibited status. And the jury was instructed, accordingly, they were instructed, even the trial judge here, being one of the first to consider rehave went really above and beyond what rehave even required and he instructed the jury that not only did they need to find that he knowingly possess the firearm, that he knowingly was a prohibited person, but also something rehab doesn't even require which is that he knew of his prohibited status. He knew he was therefore not allowed to possess a firearm, and the jury in this case in returned a verdict beyond a reasonable doubt, finding all of those elements. There was discussion about the stipulation here and whether that was fairly entered into or not, I would invite the court to consider the following. The opposing counsel mentioned that it would have changed his entire trial strategy, had he had more time to consider rehave and been able to undo the stipulation that he had previously entered into. I believe that that claim is not consistent with the record here. The defense in this case was very clear that they did not challenge anything other than his that he possessed that firearm. He had entered several other stipulations. This stipulation that we're referring to is only one of four. He did not challenge anything about the DNA swabs that had been taken or the interstate commerce aspect of the firearm and ammunition. He entered a stipulation also about that the drugs in this case did come back as positive for the presence of narcotics as the lab had concluded. So the trial strategy here was not to, like it sometimes is, to hold the government to its burden to prove every single element of the offense. The trial strategy was very narrowly targeted toward arguing, hey, that gun was found under the mattress. It wasn't mine. Nobody ever saw me with the gun at any point in time. And that gun could have been under that mattress for years. It wasn't me who touched it. So given that, our position is that the harmless error standard should apply here. Are you throwing Mr. Dion under the bus here? I'm just kidding. Can I ask you, you know, I know this is a, I think this is a 2019 appeal. Are you familiar with this court's ruling in United States versus Morales decided February 5th of this year? Yes. And how does that affect, how does that affect your argument in this case? So that actually, Morales is important here because Leonard is raising an argument about 924A2. And he's saying that not only was the language here unclear, but the failure to cite 924A2 means that that's another basis for a deficiency in this indictment. And Morales really puts that argument to rest. It says we read, rehave to have interpreted 922G itself as including a knowledge of status element, not as having held that 922G is a non-criminal provision that 924A2 incorporates to create a criminal offense. And so that really shows that when appellant is relying on the appellant's interpretation of more in saying that somehow 924A2 must be cited is really not what this court has determined. Thank you. Sure, Your Honor. Briefly, I'd like to respond to the argument of the 30-day requirement. I believe that that comes from the speedy trial statute, which is 3162C2. What that says is that there's 30 days from the initial appearance with counsel that the defendant is entitled to unless he waives that. So to address Judge Grant's question from earlier, whether it was required for it to be 30 days from indictment or superseding indictment in this case, at least that statute would not seem to address that at all. I see that I am beyond my time. So as far as all of the other arguments, including the motion to suppress, we would rely on what we have in our briefs, and we would ask this court to affirm the convictions and sentence. Thank you very much. Thank you, Ms. Gall. Mr. Hersey. Yes, Judge Grant, I'd like to address you on one of the questions you asked of opposing counsel in relation to the notice for the indictment. As you know, Rule 7 sets out what... I'm sorry to interrupt. Please make sure you lean up because I want to be sure I hear your answer. Thank you. And I'll raise my voice. I usually don't raise my voice. But to address the concern you had, a justifiable one, notice, Rule 7c of the Federal Rules of Procedure talks about that. It says that a defendant must be put on notice of what he's charged with. There was a conversation I had with Judge Ruiz, a trial court judge, that perfectly exemplifies what confusion we had at the trial just after rehab. I was talking to the judge on the record, and I said, oh, Judge, this knowingly thing is really interesting because I think it modifies not only that he knew he was a convicted felon, but that as a convicted felon, he did not possess a firearm. He looked at me and said, hmm, you might be right on that. So there we are, a federal judge and a practitioner of 43 years, and we're debating in the middle of the trial what my guy is facing. Although I will say, I think that that, I read that colloquy too, and I think that that's a different argument that you're making, and that, I think, to my reading of rehab, that's not in question. But I think that would be a separate legal argument about whether you have to know your status, not whether the indictment fairly charges that you knew that you were a convicted felon, right? Yes, and I agree with that, and it just shows, Judge, at that point, while we're still wrestling with jury instructions and what exactly the government has to prove, there was confusion because of that indictment based between the federal judge and I. So that's one thing you should take into consideration. Also, Judge Martin, in relation to your question of when the superseding indictment was filed, it was actually filed about two months before the trial. So we came in and we were arraigned on June 24th, on that Sunday. Rehab had come out on that Friday. We entered the stipulation about two weeks before trial, trying to be professionals and enter all the stipulations so we'd have it marked and tabbed and all that in advance. But if I had known that rehab was coming out, I would not have entered into that stipulation. And that would have been a different trial strategy on how I handled the knowledge and lack of knowledge of my time in relation to the knowledge of status. When did you say the superseding indictment came out two months before trial? Is that what you just said? That's correct. It was about two months before trial. Also, I want to make... You also said something about the Friday before the trial started on Monday. What happened then? Or at least I thought that's what it was. Rehab came out on, I think, June 23rd. We started trial the following Monday. Okay, got it. Where does your 30-day argument play in if the superseding indictment was two months before trial? It was filed, but we weren't brought into court on it. We had no knowledge of it. We were brought into court and arranged on the superseding indictment on the first day of trial on June 24th. It was filed two months before, and we were not arranged on it. Okay. Also, on the motion to suppress issue, I want to make that easy for you when you go back and have your thinking. If you accept the facts as the government put them forward at the motion to suppress hearing, the government wins. But if you apply them as Shalell says, using the vantage point of what happened just before trial with the detective saying, I cannot now identify that man on the video, with the lab reports having come back saying these are not controlled substances, but they're not being officially identified of the so-called brandishing of the firearm, and the jury verdict of the prevailing party, Mr. Jackson, saying we completely discredited the government's testimony on whether or not Jackson had a firearm, there is no probable cause. Do you have any cases that apply that retrospective look at probable cause rather than what the officers or the judge knew at the time? Yes, the 11th Circuit's President N. Shalell, and I cited that in my brief. It's C-H-I-L-E-L, Prince Shalell Ramirez. If you look at that in my brief, I set that out. Thank you so much, Mr. Hersey. I appreciate it, and would ask that you remain with the instruction. All right. Thank you so much.